[No. 7,450—In Bank.]

April 29, 1882.

## LLEWELLYN KIDDER *v.* IRA STEVENS.

EJECTMENT—PLEADING—FINDING—SEISIN — OUSTER—TIME.—In ejectment the complaint averred seisin in fee on the first day of June, 1879, and an ouster on the same day; and it was found by the Court that the plaintiff was owner in fee of the land in controversy, on the twenty-ninth of June, 1868, and conveyed the same to M. K. on the sixteenth of November, 1875; that M. K. died testate in May, 1879; that his executor leased to the defendant in August of the same year, and that defendant had continued to occupy the premises ever since. It was objected that there was no finding on the issue of ownership on the first day of June, 1879, the date of the seisin alleged in the complaint. *Held:* The findings cover all the material issues.

ID.—ID.—ID.—ID.—ID.—ID.—PRESUMPTION OF LAW.—A presumption of law that is disputable when not changed by evidence becomes to the Court a rule indisputable for the case, and the Court is bound to apply it.

ID.—ID.—ID.—ID.—ID.—ID.—A status once established is presumed by the law to remain until the contrary appears.

ID.—ID.—ID.—ID.—ID.—ID.—IMMATERIAL ALLEGATION.—The allegation of time as to seisin or ouster in our so called action of ejectment, is not material, and a denial of it raises no material issue except when the mesne profits are in question.

DEED—MENTAL INCOMPETENCY.—The Court found that on the sixteenth day of November, 1875, and before and after that date, L. K. was of unsound mind—his mental unsoundness consisting of a fixed insane delusion in regard to religion, to wit: that he had incurred the displeasure of God, and could only expiate his sins by refraining from partaking of food; that he also during said time had occasional paroxysms of *meloncholia*; that on that day he signed, acknowledged and delivered to M. K. (his wife) a deed of gift of the premises in controversy; that said L. K. at the time he made and delivered the deed, understood the nature, force and effect of the act, and that said act was not the result of his insane delusion.

*Held*, that the finding was sustained by the evidence, and that the deed was valid.

ID.—DELIVERY—CONFLICT OF EVIDENCE.—The fact that the deed was found among the papers of the grantee after her death is some evidence at least that it had been delivered to and accepted by her; and evidence tending to prove non-delivery would simply raise a conflict in the testimony.

ID.—ADMISSIBILITY OF EVIDENCE.—The Court did not err in admitting the evidence of Houghton (stated below). It tended to prove a motive for the making of the deed, and was admissible under the issues being tried.

ID.—ID.—No question concerning the will of M. K. was involved in this case, and it was not error to exclude evidence as to its existence or destruction.

ID.—ID.—DELIVERY—RES GESTÆ.—Evidence of the acts and declarations of

the grantee in regard to the deed while it was in her actual possession were admissible upon the question of her acceptance of it.

ID.—ID.—HEARSAY—INSANITY.—It was not error to exclude evidence of the declarations of M. K. as to what was done or said by her husband some time after the execution of the deed.

APPEAL from a judgment for the defendant and from an order denying a new trial in the Superior Court of the County of Santa Clara. SPENCER, J.

The following is the statement of Houghton referred to in the opinion.

Mr. Houghton, of counsel for defendant, here made a statement in reference to the ranch on the Coyote, alluded to in the testimony as follows, which plaintiff's counsel agreed to but objected that it was irrelevant:

"The property on the Coyote was deeded to S. J. Hensley as trustee for Mary Kidder, a number of years ago by her brother by way of gift—he claiming under what is known as the five hundred acre lot title from the City of San Jose, the land being a part of the Pueblo lands of the City of San Jose. The five hundred acre lot title proved not valid, but Mrs. Kidder was living upon the property when Kidder married her, Hensley procured a valid deed from the City of San Jose, subsequently to himself, for the same property. Stowell, the brother of Mrs. Kidder, died, and Russell Stevens, her son, was appointed administrator of his estate. After the administration was ended and the estate was closed up, Kidder came into the family, and when Hensley was attempting to eject Mrs. Kidder (formerly Mrs. Stevens) and opened up the estate of Stowell, and as a representative of the estate of Stowell, if I remember correctly, brought an action against Hensley to have him declared a trustee and to compel a conveyance of the property. This action was compromised, and the deed to Mrs. Kidder was the result.

*Burt & Pfister*, for Appellant.

The findings are clearly insufficient to sustain the judgment. The ultimate fact of ownership is not found for defendant and the probative facts found by the Court do not bring about, as a necessary deduction therefrom, ownership against plaintiff in defendant or any other person. These

probative facts may all be true and yet plaintiff may have been at the commencement of his action the owner of the property. (*Knight* v. *Roche*, 56 Cal. 15.)

In view of all the acts and declarations by Mrs. Kidder after the purported execution of the deed, especially her declarations in conversation with Mr. Bazell, wherein she specified the very reason why she did not accept the deed, no such idea as that of an actual acceptance of the deed can be entertained for a moment. The error of law into which the learned judge fell, the Court will see to be this: He took the mere fact that the deed was a gift-deed and clearly for the benefit of the grantee, to raise a presumption of an acceptance by the grantee as a rule of law. If there is any presumption at all from the fact that the deed is a gift-deed, and therefore clearly for the benefit of the grantee, it is only a presumption of evidence and not a rule of law. (*Fitch* v. *Bunch*, 30 Cal. 212; *Dow* v. *Gould & C. S. M. Co.*, 31 Id. 652; *Gilbert* v. *Sanderson* [Sup. Ct. Iowa]; Washburn's Real Prop. [3 ed.], Vol. 3, 254, 255, 261, 262.)

The admissions of Mary Kidder during her life as to the mental condition of plaintiff, both before and after the purported execution of the deed, were admissible for the purpose of showing the mental condition of plaintiff at the time of such purported execution, and the Court erred in excluding the admissions of Mary Kidder as to conduct of plaintiff after such purported execution.

The Court erred in admitting the declaration testified to by Jessie Kidder. (Washburn's Real Prop., 3d. ed. 262; Whar. Ev. 5, 265, 1180.)

The Court erred in admitting the statement of Mr. Houghton, it being irrelevant, immaterial and incompetent.

*S. A. Barker*, and *Houghton & Reynolds*, for Respondent.

It is well settled, that where a deed is found in the grantee's hands, a delivery and acceptance is always presumed. (3 Washburn on Real Prop. 263, 3d. ed.) And also, that where the grant is a pure, unqualified gift, the presumption of acceptance can only be rebutted by proof of dissent. (Id. 264-5.) The statement of Mr. Houghton, counsel of defendant, was relevant.

*S. F. Leib, Amicus Curiæ.*

The plaintiff there, finds himself in this helpless dilemma. The findings are correct. So he has no remedy by attacking the findings by motion for a new trial. There are no presumed findings; so he can not attack a presumed finding of title in defendant at the time of commencement of action. The plaintiff, then, while being full owner, both now and when he commenced the action, is yet, by this new departure in our practice, to lose his land. This, we submit, is both unjust and illogical, as well as contrary to our previous decisions. (*Matthews* v. *Kinsell,* 41 Cal. 514; *Marshall* v. *Shafter,* 32 id. 193; *Pico* v. *Cuyas,* 47 id. 177-8; *Barrente* v. *Garratt,* 50 id. 114; *Smith* v. *Acker,* 52 id. 219; *Frazier* v. *Crowell,* id. 402.)

THORNTON, J.:

The findings in this case are as follows: "1. On the twenty-ninth day of June, 1868, Barton B. Bee was the owner in fee of the premises described in the complaint, and on said day sold and conveyed the same to the plaintiff, L. Kidder; that said premises were the separate property of said L. Kidder.

"2. That on and prior to the sixteenth day of November, 1875, and from thence until the seventh day of May, 1879, said L. Kidder and Mary Kidder were husband and wife, and on the last-named date said Mary Kidder died testate.

"3. That prior to and on said sixteenth day of November, 1875, and for a long time thereafter said Llewellyn Kidder was of unsound mind; that his mental unsoundness consisted of a fixed insane delusion in regard to religion, to wit; That he had incurred the displeasure of God and that he could only expiate his sins by refraining from partaking of food. He also, during such time, had occasional paroxysms of *melancholia.*

"4. That on the sixteenth day of November, 1875, said Llewellyn Kidder signed, acknowledged, and delivered to said Mary Kidder a written deed of conveyance in proper form by way of gift to her of the said premises described in the complaint, and said Mary Kidder accepted said instrument.

"5. That said Llewellyn Kidder at the time he made and delivered said deed understood the nature, force and ef-

fect of said act, and that said act was not the result of his said insane delusion.

" 6. That said Mary Kidder was at the time of her death a resident of the county of Santa Clara, State of California. That in her last will she nominated and appointed Joseph C. Brown the executor thereof. That said will was proved in and admitted to probate by the Probate Court of said county of Santa Clara, on the nineteenth day of July, A. D. 1879, and letters testamentary were issued upon said will and the probate thereof by said Probate Court to said Brown, who duly qualified as such executor on the twenty-sixth day of July, 1879, and has been ever since the acting executor of said will.

" 7. On the first day of August, 1879, said Brown as said executor demised and let said premises to the defendant Ira Stevens, who then entered into the possession and occupation thereof as the tenant of the estate of said Mary Kidder, deceased, and has ever since occupied the same.

" 8. That the value of the use and occupation of said premises on the first day of August, 1879, was, and ever since has been, twelve dollars per month.

" 9. That said James Singleton was, on and prior to the first day of August, 1879, the properly appointed and acting guardian of the person and estate of said Llewellyn Kidder under and by virtue of proper orders of the Probate Court of the said county of Santa Clara, and letters of guardianship properly issued pursuant to said order to him, said Singleton, and he, said Singleton, has ever since continued to be said legally acting guardian.

" 10. That shortly after the first day of August, 1879, said Singleton, as said guardian, demanded the .possession of said premises for his ward from said defendant, and said Stevens then refused and ever since has refused to surrender the possession thereof."

An objection is taken to the findings of fact which involves a singular misconception of their meaning. It is found that L. Kidder, on the sixteenth day of November, 1875, conveyed the land in controversy to his wife, Mary Kidder, and that on the seventh day of May, 1879, Mary Kidder died testate, that her will was on the nineteenth of July, 1879, properly proved,

and one Brown named in the will as executor was duly appointed executor and acted as such, and on the first day of August, 1879, as such executor, demised the premises to one Ira Stevens, the defendant, who has ever since occupied the same. The other findings cover all the other issues in the action which were material.

Now it is said, that in the complaint ownership was alleged in the plaintiff and an ouster on a day named—which was denied, that the Court made no finding on that issue, but made a finding which it took to be a finding of ownership in the party under whom the defendant claims at a date several years prior to the date named in the allegation.

The complaint avers a seisin in fee on the first day of June, 1879, and an ouster on the same day. It is found that the plaintiff was the owner in fee on the twenty-ninth of June, 1868, and conveyed to Mary Kidder, on the sixteenth day of November, 1875. And it is said this is not a finding on the issue of ownership on the first day of June, 1879, when the seisin was averred to have been had in the complaint. Why it is not such a finding it would be difficult to point out when the rules of law are applied to the facts as found. We must read all facts, whether in a pleading, or a special verdict, or an agreed statement, or finding of facts, in the light of the rules of law. Presumptions of law are rules of law, whether disputable or the contrary. If the disputable presumption is not contradicted or removed by evidence, it is a rule of law to be applied as inflexibly as a presumption that is indisputable or conclusive ; in other words, a presumption of law that is disputable; when not changed by evidence, becomes to the Court a rule indisputable for the case, and the Court is bound to apply it.

A *status* once established is presumed by the law to remain, until the contrary appears (See *People* v. *Feilen,* 58 Cal. 218) ; or as a like rule is expressed, in the Code of Civil Procedure (See Section 1,963, subdivision 32), "that a thing once proved to exist continues as long as is usual with things of that nature."

It is found here that a conveyance of the premises was made in 1875 by plaintiff, the owner, to Mary Kidder. The law presumes that the estate created by that deed continued

until it was proven to have ceased, in the only way in which it can cease, by a conveyance or by a descent cast. It is further found that Mary Kidder died testate, in May, 1879; the executor was properly appointed in same year, leased to defendant in August, 1879, and that defendant had continued to occupy the premises ever since. Now, the estate of Mary Kidder having been found to have commenced in November, 1875, the law says that her estate continues until the proof shows that it had gone out of her; it then continued until her death, and by her will her executor under the law had the right to demise it to the defendant.

The vice of the view taken by the learned counsel for appellant is this, that he takes that for an inference, or, as he calls it, "a presumption from evidence," which is in fact *a pure presumption of law.* Though a disputable presumption, it is still a rule of law. (So held in *Salmon* v. *Symonds*, 24 Cal. 264.)

But, in fact, the allegation of time as to seisin or ouster in our so called action of ejectment is not material, and a denial of it raises no material issue, except when the *mesne* profits are in question. (So held distinctly in *Yount* v. *Howell*, 14 Cal. 468.) If no material issue is raised by a denial of the time alleged, it is unnecessary to find upon it. It is stated in all the elementary books that time is immaterial as to seisin or ouster in the common law action of ejectment, and in all real actions. It is only required that the seisin or ouster should be alleged to exist before the commencement of the action, but the *day or date* is otherwise entirely immaterial. (See Gould's Plead., §§ 63, 101 of Ch. 3; 1 Chitty's Pl. 257 *et seq.*, 9th Am. Ed.; Stephen on Plead. 292 *et seq.*, 9th Am. Ed.; *Taylor* v. *Wells*, 2 Saunder's Rep., 74 note c.; Com. Dig. Pleading, (c. 19); *King* v. *Bishop of Chester*, 2 Salk, 561; S. C., Skinner, 660.)

But it is said that the plaintiff with such a finding is without remedy. The point in this regard is thus stated: "He could not attack the finding of ownership in B. on the tenth of January, 1850, (averred to have been the tenth of January, 1880), for that finding would speak the truth. There would be nothing left for him to attack, on his motion for a new trial, but a disputable presumption of evidence, which he had

already met and rebutted on the trial of the case, and he . would find himself fighting the air with his hands, with no hope of relief from the position occupied by him without any fault of his own."

If what the learned counsel states be a "disputable presumption of evidence," is such, there can be no difficulty in his remedy. If the evidence sustains the so-called presumption, there is nothing to attack. If .it does not, a motion for a new trial is the proper remedy. The counsel seems to think that inasmuch as he had met and rebutted this presumption on the trial, it would be idle to attack it again, in the mode pointed by law for such an attack. It is sufficient to say in answer to this that the Court did not agree with him that such presumption was met or rebutted on the trial, but found against him; and when the Court so finds, to review such finding on the ground that such presumption was met and rebutted on the trial, that is to say, that the evidence was insufficient to support the fact as found, there must be a motion for a new trial, or the party must bring it before this Court in accordance with Section 939, C. C. P.

The findings in our judgment cover all the material issues. The opinion in the Department is satisfactory on the points to which it relates, and we conclude that the judgment and order should be affirmed, and it is so ordered.

McKEE and SHARPSTEIN, JJ., concurred.

MORRISON, C. J., concurred in the judgment.

McKINSTRY, J., concurring:

I concur in the judgment. It has been repeatedly held here that ownership—seisin in law—is to be treated as a *fact* both in pleadings and in findings. The seisin of plaintiff at the commencement of the action and the possession of the defendant at the commencement of the action are, under our system, the material facts to be alleged and proved by plaintiff in the class of actions which, for the want of a better name is called "ejectment." As said by Mason, J., in *Walter v. Lockwood*, 23 Barb. 233, "the facts constituting plaintiff's cause of action in this case are that he has lawful title

as owner in fee simple, and that the defendant is in the possession and unlawfully withholds the possession thereof from him." "Now, what is the issue? The plaintiff alleges that he has lawful title, as owner in fee simple, to these premises. This is denied by the answer, and a perfect issue is made upon the plaintiff's title," etc. And by Field, C. J., in *Payne* v. *Treadwell*, 16 Cal. 243: "Now what facts must be proved to recover in ejectment? These only: That the plaintiff is seised of the premises, or of some estate therein in fee, or for life, or for years, and that the defendant was in their possession at the commencement of the action. The *seisin* is the *fact* to be alleged. It is a pleadable and issuable fact, *to be established* by conveyances from a paramount source of title, or by evidence of prior possession," etc. (See also *People* v. *Mayor, etc.*, 28 Barb. 240: 8 Abb. Pr. 7; S. C., 17 How. Pr. 56; *Walter* v. *Lockwood*, 4 Abb. Pr. 307.) The plaintiff recovers because defendant is actually possessed of that which the plaintiff has the right to possess when he goes to Court for redress.

Aside from the question of ouster by the defendant, the material question is: Was plaintiff seised of an estate which gave him the right to immediate possession when he brought his suit? He may prove his right by evidence of facts—as a conveyance from the source of title, or a prior possession—of a date anterior to the commencement of the action. In such case, the seisin of the plaintiff is presumed to have continued until suit brought. But such presumption has no place in the construction of his pleading, which should aver the ultimate and material fact.

In the case before us the Court below found that on a certain day one Bee was the owner of the demanded premises, who sold and conveyed the same to plaintiff, and that, subsequently, on a day four years prior to the commencement of the action, plaintiff conveyed to one Mary Kidder, under whom defendant claims.

Appellant urges that the findings do not pass upon the ultimate issue—plaintiff's ownership and consequent right to the possession—at the time of the commencement of the action. Had the complaint alleged that plaintiff was seised in fee when the suit was brought, appellant's point would

have been well taken. The findings do not show but plaintiff re-acquired the right to the possession intermediate his conveyance to Mary Kidder and the commencement of the action. There is no finding that either plaintiff or defendant is or was at the commencement of the action the owner seised in fee or of a less estate, or otherwise entitled to the possession of the demanded premises.

But the complaint here only alleges that, on the first day of June, 1879, "the plaintiff was the owner, seised in fee," etc., and that while the plaintiff was so the owner, etc., "the defendant did, on or about the said first day of June" enter into and oust plaintiff from the premises, "and ever since that day has wrongfully withheld," etc. The precise date of the *ouster* is immaterial, but the plaintiff must prove it to have occurred prior to the commencement of the action. This action was commenced November 29, 1879. There is no averment that plaintiff *is* seised, in fee or otherwise. The allegation of a *wrongful* withholding is of a conclusion of law, which can follow only where facts are alleged which show plaintiff to be entitled to the possession when the suit is brought. If the Court below, adopting the language of the complaint, had found "on the first day of June, 1879, the plaintiff was the owner seised in fee," etc., such finding would not have been determinative of the issue which is one of the two material issues in this form of action. Then it might have been said: "*Non constat* but plaintiff parted with his title before he commenced his action."

The objection of plaintiff is that the Court below failed to find upon the ultimate issue—was plaintiff the owner and entitled to the possession of the demanded premises when he brought his action? Such a finding, however, would have been broader than the issue, since the averment of the complaint is not that plaintiff *is* the owner (or was at the commencement of the action), but that he was seised in fee at a definite point of time long previous to the commencement of the action.

MYRICK, J., concurred.

The following is the opinion of Department Two, referred to:

SHARPSTEIN, J.:

If there is evidence sufficient to justify the findings that Llewellyn Kidder executed a conveyance of the demanded premises to Mary, his wife, and that she accepted said conveyance; and that at the time of the execution and delivery thereof said Llewellyn Kidder understood the nature, force and effect of said act, and that said act was not the result of his insane delusion, the judgment of the Court below must be affirmed. The fact that the deed was found among the papers of the grantee after her death is some evidence, at least, that it had been delivered to and accepted by her. So that evidence which only tended to prove that it had not been delivered to or accepted by her, would simply raise a conflict in the testimony. But there was evidence independently of the fact of possession which tended to prove that she did accept the deed.

As to the mental condition of the grantor at the time he executed the deed, there is clearly a conflict in the evidence, and we think that the Court was justified in finding as it did upon that issue.

We do not think that the Court erred in overruling the objection to the testimony of Mr. Houghton. It tended to prove a motive for the making of the deed, and was admissible under the issues being tried.

No question concerning the will of Mrs. Kidder was involved in this case, and it was not error to exclude evidence as to its existence or destruction.

We do not think that the Court erred in admitting the testimony of the witness Jesse Kidder as to what Mrs. Mary Kidder said concerning the deed when she had it in her hands, in the presence of the witness. Upon the question of acceptance it might have an important bearing. We can not conceive why evidence of the acts and declarations of the grantee in regard to the deed while it was in her actual possession would not be admissible upon the question of her acceptance of it; or why evidence of the declaration as well as of the acts were not admissible.

We are unable to discover any principle upon which evidence of the declarations of Mary Kidder as to what was

done or said by her husband some time after the execution of the deed was admissible. Upon the question of his sanity at the time of the execution of the deed evidence of what he said and did afterwards was admissible. But we know of no rule by which a witness could be allowed to testify to what somebody else said about the acts or conduct of the person alleged to have been insane. Suppose that it could have been shown that Mrs. Kidder communicated to some one that at some time after the execution of the deed her husband acted like an insane person, could it have any bearing upon the issue of sanity unless it tended to prove that he was either sane or insane? And for the purpose of proving that he was or was not, it was clearly inadmissible. It is sometimes important to prove that a certain declaration was made without regard to its truth or falsity. But that is not this case. Here it was only important to show what were the acts and conduct of the person alleged to have been insane. It was not in any sense important to show what Mrs. Kidder, who had not been and could not be called as a witness, had said they were.

Judgment affirmed.

MORRISON, C. J., and SHARPSTEIN and THORNTON, JJ., concurred.